UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:25-cr-*145-WWB-LLL*
18 U.S.C. § 371

MADHUKAR SHARMA

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**

A.   Introduction

At all times material to this Information:

1.      Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2.      Medicare was a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

3.      Medicare was divided into four parts: A, B, C, and D.   Part B provided supplementary medical insurance benefits that covered certain doctors' services, outpatient care, preventive services, and medical supplies.

4.      Each Medicare beneficiary was identified with a unique beneficiary identification number, which was used, among other things, to determine a

beneficiary's eligibility for Medicare benefits and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services.

5.      From April 4, 2022, until the declared end of the COVID-19 public health emergency on May 11, 2023, Medicare covered and paid for OTC ("over the counter," i.e., not prescribed or ordered by a physician) rapid antigen COVID-19 tests for beneficiaries with Medicare Part B, at no cost to the beneficiaries. However, Medicare regulations provided that Medicare would pay for such tests only if a beneficiary requested the tests.

6.      The defendant, MADHUKAR SHARMA, was an owner and operator of several business entities, including Ace Medical LLC, Ace Biomedical Labs LLC, Medical Specialists of Northeast Florida PLLC, Forensic Stat Laboratory Inc., and Southern Plains Medical Center Of Garvin County LLC (collectively, "the defendant's businesses").   Ace Medical, Ace Biomedical, and Medical Specialists of Northeast Florida each had its principal place of business in Jacksonville, in the Middle District of Florida.

## B.  Charge

Beginning in or about February 2023 and continuing through in or about July 2023, in the Middle District of Florida, and elsewhere, the defendant,

MADHUKAR SHARMA,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit an offense

against the United States, that is:

(1)    to knowingly and willfully pay and offer to pay remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), and

(2)    without lawful authority, to knowingly and willfully, purchase, sell, distribute, and arrange for the purchase, sale, and distribution of Medicare beneficiary identification numbers, in violation of 42 U.S.C. § 1320a-7b(b)(4).

### C.    **Manner and Means**

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1.    The defendant enrolled the defendant's businesses, and caused them to be enrolled, with Medicare as participating providers that would provide clinical laboratory services to Medicare beneficiaries under Part B.

2.    The defendant entered into agreements with other companies pursuant to which the companies provided lists of identifying information for Medicare beneficiaries, including their Medicare beneficiary identification numbers, for the

3

purpose of the defendant's businesses providing COVID-19 tests to the beneficiaries and billing Medicare for the tests.

3.     The defendant paid the companies a set dollar amount per beneficiary, but he was required to pay this amount only if a claim submitted on behalf of a beneficiary was paid by Medicare.

4.     The defendant sent COVID-19 tests, and caused them to be sent, to the Medicare beneficiaries whose identifying information had been provided to the defendant's businesses by the companies.

5.     The Medicare beneficiaries to whom the COVID-19 tests were sent had not requested the tests.

6.     For the period of February 2023 through July 2023, the defendant submitted and caused to be submitted approximately 340,553 false and fraudulent claims to Medicare in the total approximate amount of $51,331,392 and received reimbursements from Medicare for that period totaling approximately $30,092,852.

7.     From the reimbursement amounts paid to the defendant by Medicare, the defendant paid the companies who provided the Medicare beneficiary identifying information in accordance with their agreement, that is, he paid a set amount for each beneficiary for whom Medicare paid the claim.

4

### D.   Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1.   On or about April 13, 2023, the defendant, on behalf of Medical Specialists of Northeast Florida, submitted and caused to be submitted a claim to Medicare for the provision of eight rapid antigen COVID-19 tests to a Medicare beneficiary with the initials J.P. for a total billed amount of approximately $96, for which Medicare reimbursed Medical Specialists of Northeast Florida a total of approximately $94.

2.   On or about May 8, 2023, the defendant, on behalf of Forensic Stat Laboratory, submitted and caused to be submitted a claim to Medicare for the provision of eight rapid antigen COVID-19 tests to a Medicare beneficiary with the initials D.M. for a total billed amount of approximately $96, for which Medicare reimbursed Forensic Stat Laboratory a total of approximately $94.

3.   On or about May 8, 2023, the defendant, on behalf of Ace Biomedical Labs, submitted and caused to be submitted a claim to Medicare for the provision of eight rapid antigen COVID-19 tests to a Medicare beneficiary with the initials E.H. for a total billed amount of approximately $96, for which Medicare reimbursed Ace Biomedical Labs a total of approximately $94.

4.      On or about May 12, 2023, the defendant, on behalf of Ace Medical Labs, submitted and caused to be submitted a claim to Medicare for the provision of eight rapid antigen COVID-19 tests to a Medicare beneficiary with the initials S.L. for a total billed amount of approximately $96, for which Medicare reimbursed Ace Medical Labs a total of approximately $94.

All in violation of 18 U.S.C. § 371.

### FORFEITURE

1.      The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2.      Upon conviction of a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2) and/or 42 U.S.C. § 1320a-7b(b)(4), in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture for approximately $30,092,852, which represents the proceeds the defendant obtained from the offense, and $13,731,838.65 surrendered by the defendant and in the custody of the United States Marshals Service.

4.      If any of the property described above, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

ROGER B. HANDBERG
United States Attorney

By: _____
ARNOLD B. CORSMEIER
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

7